IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| LAVERNE R. JONES, | ) |
| | ) Case No. 4:07CV00049 |
| Plaintiff, | ) |
| | ) |
| v. | ) **MEMORANDUM OPINION** |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) By: Jackson L. Kiser |
| | ) Senior United States District Judge |
| Defendant. | ) |

Before me is the *Report and Recommendation* of United States Magistrate Judge B. Waugh Crigler. The Magistrate Judge recommends granting the Plaintiff's *Motion for Summary Judgment* and remanding the case to the Commissioner for further proceedings. I have reviewed the Magistrate Judge's recommendation, as well as the Plaintiff's *Objections* and Defendant's response to those objections. The matter is now ripe for decision.

For the reasons stated below, I will **REJECT** the Magistrate Judge's *Report and Recommendation* and **SUSTAIN** the Defendant's *Objections*. I will **GRANT** the Defendant's *Motion for Summary Judgment* and this case will be **DISMISSED**.

**I.    STATEMENT OF FACTS AND PROCEDURAL HISTORY**

Plaintiff Laverne Jones filed a Title II application for a period of disability and insurance benefits on November 14, 2005, as well as a Title XVI application for supplemental security income on that same date. These claims were denied by the Social Security Administration ("SSA") on February 14, 2006, and again upon reconsideration on April 17, 2006. Jones then filed a request for a hearing before an Administration Law Judge ("ALJ") on June 5, 2006.

On February 12, 2007, the ALJ held a Video Hearing, and heard the arguments of Jones's

1

lawyer as well as the testimony of a vocational expert. After considering the evidence and arguments presented, the ALJ ruled that Jones was not disabled under the laws and regulations governing the Social Security Act ("the Act") from September 24, 2005, through the date of this decision. The ALJ found that Jones had not engaged in substantial gainful activity since her alleged disability onset date, September 24, 2005, and that she was insured for benefits through December 31, 2010. (R. 16, 18.) The ALJ then found that the lumbarization of her lower back was a severe impairment, but when viewed individually or in combination with her other impairments, it was not severe enough to meet or equal any listed impairment in the regulations. (R. 19.) Finally, the ALJ found that Jones, as a younger individual under the regulations, retained a residual functional capacity ("RFC") such that she could perform light exertional work, albeit limited to only occasional stopping, kneeling, crouching, crawling, and climbing of ladders, ropes and scaffolds. (R. 20.)

The ALJ found that Jones's complaints of lower back pain and knee pain were "not entirely credible" regarding their intensity, persistence and limiting effects, despite medical evidence of these impairments that could reasonably cause the alleged symptoms. (R. 21.) The ALJ also noted that despite being offered assistance from "Project Access,"[1] Jones had not followed-up with the organization to get the MRI scan of her back that she had been repeatedly recommended to get by several doctors. Additionally, although Jones had claimed that she could not afford certain medications that were prescribed to treat her symptoms, she had not asked her

---

[1] "Project Access" is a non-profit clearinghouse which receives grant money from the federal government and coordinates the provision of medical care from participating providers (doctors, specialists, hospitals, pharmacies) to residents of the Danville-Pittsylvania County region who are uninsured or underinsured.

2

doctor for generic, low-cost versions of the same drugs, or requested information on programs that might assist her in paying for those medications. (R. 22.) Finally, the ALJ noted that to the extent that Jones was limited in performing daily activities, she appeared to be self-limited. (R. 23.)

As part of the ALJ's finding that Jones's complaints concerning the limiting effects of her severe impairment lacked credibility, the ALJ discussed physician's assistant Amy Branson's submissions to the SSA. Branson opined that Jones could not reach in any direction, and could only occasionally handle objects. (R. 192.) However, the ALJ discussed the opinion of Branson's supervising medical doctor, Dr. Nazmul, in more detail. Dr. Nazmul had submitted that Jones could perform occasional reaching and frequent gross and fine manipulation with her hands, in contrast to Branson's opinion. (R. 189.) In addition, the ALJ credited the state medical consultant, who found that Jones could perform light work activities and was able to stand and walk for two hours, possibly longer with frequent breaks, and could sit for four hours with frequent breaks. (R. 23, 177-82.) The consultative examiner from Roxboro Medical Facility, North Carolina, also determined that Jones had no manipulative limitations, although she would have problems performing postural activities. (R. 163-64.)

The Vocational Expert ("VE") at Jones's hearing reviewed the vocational records and testimony, determining that Jones had past relevant work as a cashier at a pharmacy, a folder and toy picker at Dan River Mills, a wire stripper, and as a waitress. The VE considered the latter two positions to be light and unskilled, and low level semi-skilled with light exertional requirements, respectively. Given Jones's RFC, determined by the consultative examiner and the report of the state medical consultant, and the physical and mental demands of her past relevant

work, the VE determined that Jones could return to work in some of the occupations she had performed in the national economy. (R. 24.) The VE, in response to Jones's counsel's questioning, stated that an individual with the limitations set forth in the reports by Branson and Dr. Nazmul (i.e. one who could not perform sustained walking or sitting) could not engage in competitive employment. (R. 24.) However, the ALJ ultimately decided that because Branson and Nazmul's reports were inconsistent with other medical sources such as the state medical consultant and consultative examiner, her RFC was sufficient to allow employment pursuant to the VE's testimony. (R. 24.)

Jones followed the administrative procedures and appealed the ALJ's decision to the Appeals Council, which affirmed the ALJ's decision. At this point, the Commissioner's decision became final, and Jones filed this action in the United States District Court for the Western District of Virginia on October 15, 2007. This case was assigned to Magistrate Judge B. Waugh Crigler, who issued his *Report and Recommendations* on May 28, 2008, after considering motions for summary judgment filed by both parties. Magistrate Judge Crigler recommended that the Plaintiff's motion be granted and the case remanded to the Commissioner for further proceedings, on the grounds that Branson's testimony had not been fully considered by the ALJ, and because the ALJ's decision might be affected by an MRI performed on Jones that had not been submitted to the Commissioner. The Commissioner timely filed his *Objections* to the recommendation, and Jones filed her response thereafter.

## II.     STANDARD OF REVIEW

Congress has limited judicial review of decisions by the Social Security Commissioner. I am required to uphold the decision where: (1) the Commissioner's factual findings are supported

4

by substantial evidence; and (2) the Commissioner applied the proper legal standard. 42 U.S.C. § 405(g); *see also Craig v. Chater,* 76 F.3d 585 (4th Cir. 1996). The Fourth Circuit has long defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (*quoting Richardson v. Perales*, 402 U.S. 389, 401 (1971)). In other words, the substantial evidence standard is satisfied by producing more than a scintilla but less than a preponderance of the evidence. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

The Commissioner is charged with evaluating the medical evidence and assessing symptoms, signs, and findings to determine the functional capacity of the claimant. 20 C.F.R. §§ 404.1527-404.1545; *Shively v. Heckler*, 739 F.2d 987, 990 (4th Cir. 1984). The Regulations grant the Commissioner latitude in resolving factual inconsistencies that may arise during the evaluation of the evidence. 20 C.F.R. §§ 404.1527 and 416.927. If the ALJ's resolution of the conflicts in the evidence is supported by substantial evidence, then I must affirm the Commissioner's final decision. *Laws*, 368 F.2d at 640.

### III. DISCUSSION

Plaintiff contends that the ALJ did not have substantial evidentiary support for his findings of fact, specifically because he did not give weight to the testimony of Plaintiff's physician's assistant Branson, who had determined that Plaintiff's subjective complaints were justified and that she was objectively incapable of reaching in any direction or manipulating objects for more than brief durations. Plaintiff also argues that the Magistrate Judge's recommendation should be adopted so that she can submit the results of an MRI of her back, so that the ALJ, on remand, will have that objective medical evidence of her condition to consider.

5

As the standard of review requires, I am precluded from judging the evidence in this case in the way a finder of fact would, and instead must review the record before this Court and determine whether substantial evidence supports the decision of the Commissioner. For the reasons given here, I find that the Commissioner had substantial evidence in the record for his conclusion that Plaintiff's complaints were not entirely credible and that the ALJ was correct to disregard Branson's opinion, given its inconsistency with the testimony of other "acceptable medical sources."[2] While the ALJ was required to weigh Branson's opinion, that opinion should not necessarily overrule other available evidence from acceptable medical sources such as the state physicians and consultants who examined Jones. In particular, where a physician's assistant and multiple medical doctors give conflicting testimony regarding the severity and limitations imposed by a condition, an ALJ is entitled to choose the opinion of the physicians, who are acceptable medical sources, even if the physician's assistant has a longer history of treating the Plaintiff.

The Magistrate Judge and Plaintiff also both urge a remand in this case premised on the ground that Plaintiff can submit an MRI report which would better assist the ALJ in his determination. Any remand to consider evidence that was not in existence at the time of the ALJ's decision must satisfy the factors for a remand under 42 U.S.C. § 405(g), set forth in *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985). *Borders* requires that the newly discovered evidence (1) must relate back to the time the application was first filed, and be new

---

[2] Branson, a physician's assistant, does not qualify as an "acceptable medical source" under the Regulations, but is considered an "other source." *See* 20 C.F.R. §§ 404.1513(a), (d); 20 C.F.R. §§ 416.913(a), (d). Where no acceptable medical source has a longer-term relationship in treating a plaintiff, an ALJ must at least weigh the opinion of the other source. *Id.*

(not merely cumulative); (2) must be material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there must be good cause for the Plaintiff's failure to submit the evidence when the claim was before the Commissioner; and (4) Plaintiff must present to the court at least a general showing of the nature of the new evidence. *Borders*, 777 F.2d at 955.

As the Commissioner notes in his *Objections* to the Magistrate Judge's recommendation, Plaintiff cannot adequately satisfy any of the four requirements under *Borders*. Plaintiff's MRI was allegedly performed in September 2007, more than half a year after the ALJ held a hearing. Plaintiff has not proffered what the MRI report has shown, and so there is no way to tell if it would have changed the ALJ's decision or not. And Plaintiff cannot show good cause for not obtaining an MRI before or during the ALJ's consideration. The ALJ specifically pointed out that multiple doctors had recommended that Jones obtain an MRI, and that Project Access was available to fund the procedure. Plaintiff apparently postponed an MRI scheduled on May 30, 2007, which could have been offered as evidence to the Commissioner, until September 2007, which was the same month as the final decision by the Commissioner and manifestly too late to affect his decision.

## IV.   CONCLUSION

For the reasons stated below, I will **REJECT** the Magistrate Judge's *Report and Recommendation* and **SUSTAIN** the Defendant's *Objections*. I will **GRANT** the Defendant's *Motion for Summary Judgment* and this case shall be **DISMISSED** from the active docket of this Court.

7

The Clerk is directed to send a copy of this *Memorandum Opinion* and the accompanying *Order* to all counsel of record.

Entered this 1st day of August, 2008.

s/Jackson L. Kiser  
Senior United States District Judge